```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

DAVID MICHAEL SNYDER,

       Plaintiff,

v.                               Case No. 8:21-cv-2150-VMC-AEP

FORMERLY B 3 GROUP, INC.,
PHILIP D. HUNT, BRAD B. PALMER,
and OCTO CONSULTING GROUP, LLC,

       Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants Octo Consulting Group, LLC, and B3 Group, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 102) and Defendants Philip D. Hunt and Brad B. Palmer's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction (Doc. # 100), both filed on April 8, 2024. Plaintiff David Michael Snyder responded on April 29, 2024. (Doc. ## 106, 107). For the reasons that follow, the Motions are granted.

**I.   Background**

Snyder initiated this action against multiple Defendants on September 9, 2021, asserting claims for false claims under the False Claims Act ("FCA"), false records and statements

1

under the FCA, conspiracy under the FCA, and retaliation under the FCA. (Doc. # 1). This case is similar to two other FCA actions Snyder filed against other defendants.

On January 13, 2023, the United States declined to intervene. (Doc. # 17). After Snyder's counsel was permitted to withdraw, Snyder was given time to obtain new counsel. (Doc. ## 21, 23). After Snyder failed to secure counsel by the extended deadline, the Court dismissed without prejudice the claims Snyder asserted on behalf of the United States but allowed him to pursue pro se his retaliation claim under the FCA. (Doc. # 26).

Snyder later filed the pro se amended complaint on September 5, 2023, asserting "on behalf [of] himself" a claim for FCA retaliation against Defendants. (Doc. # 31). After the Court granted a motion to dismiss for lack of standing in another of Snyder's cases, see Snyder v. HMS Techs., Inc., No. 8:21-cv-2078-VMC-AEP, 2024 WL 493086 (M.D. Fla. Feb. 8, 2024), Snyder filed his second amended complaint in this case on March 18, 2024. (Doc. # 91).

The following allegations are central to Snyder's FCA retaliation claim. Snyder is a veteran. He was the owner, sole member, and President of AeroSage LLC, a Service-

2

Disabled Veteran Owned Small Business ("SDVOSB"). (Id. at 2-4, 13, 17).

The Department of Veterans Affairs ("VA") gives contracting preference to veteran-owned small businesses. The VA also places significant limits on subcontracting ("LOS"), providing that "[o]nly certain or a certain percentage of subcontracted tasks can be performed by a" non-similarly situated entity ("non-SSE"). (Id. at 5, 8). Only a SDVOSB would be a similarly situated entity ("SSE") for another SDVOSB for LOS purposes. (Id.).

Thus, businesses like Snyder's SDVOSB AeroSage were desirable as subcontractors for other SDVOSB companies that wanted to secure government contracts from the VA and comply with LOS requirements. Such companies include Defendant B3 Group (for which Defendants Hunt and Palmer were previously owners and employees, and which is now owned by Defendant Octo Consulting Group). (Id. at 4-5, 7).

AeroSage entered into a subcontracting agreement with B3 Group, in which AeroSage would serve as a subcontractor for the prime contractor B3 Group. According to the second amended complaint, "Snyder was fraudulently induced into [an] employment type subcontract relationship with the Defendants

3

because of Mr. Snyder's VA SDVOSB preference benefit assigned to AeroSage." (Id. at 13).

AeroSage also entered a mentorship agreement with the entity MCS, which was AeroSage's mentor for purposes of working on VA contracts together. (Id. at 2, 23-26). According to Snyder, MCS willfully violated the LOS for its government contracts. (Id. at 24-26). Because of these LOS violations, Snyder maintains that the claims for payment submitted by MCS — and B3 and the other Defendants — were false under the FCA. (Id.).

Snyder "made protected disclosures in furtherance of the FCA directly to Defendants. During this time in telephone conversations [Snyder] stated that if [sic] [Snyder] could not get MCS to comply, and [Snyder] was seeking to replace MCS with another qualified subcontractor that would comply with the LOS." (Id. at 24-25). Snyder "explicitly stated to the B3 team that he had an agreement to replace coconspirator MCS with a OEM contractor that would allow AeroSage, and thus B3 to be complaint with the LOS and therefore in compliance with the VA SDVOSB acquisitions rules and flow down provisions." (Id. at 25).

At some unspecified time, B3 Group terminated the subcontract with AeroSage. (Id. at 3, 25-27); see also (Id.

4

at 25) ("Instantly the B3 teams [sic] demeanor changed and they stopped looking for ways that Mr. Snyder could get B3 in compliance by replacing MCS and began to be circumspect hinting at efforts to terminate Mr. Snyder's subcontracts."). Snyder alleges that he "was a (sub)contractor, and/or agent of the Defendants at the time [he] was discharged, demoted, suspended, threatened, harassed, and in other manners discriminated against in the terms and conditions of employment relationships because of lawful acts done by [Snyder] in furtherance of other efforts to stop one (1) or more violations of this subchapter from on or about November 29, 2017 until on or about April 28, 2021." (Id. at 24). In short, Snyder alleges that B3 Group, and the other Defendants, retaliated against him for reporting alleged false claims by terminating B3 Group's contract with AeroSage.

According to the second amended complaint, "Snyder, as employee of his disregarded entity, AeroSage, in an employment type relationship as contractor and agent for the Defendants, has Article III standing to sue because he (1) suffered an injury-in-fact, (2) that is traceable to the challenged conduct of the Defendants but for the protected actions of the Plaintiff, and (3) that is likely to be redressed by a favorable judicial decision." (Id. at 15).

5

Snyder identifies the harm he suffered as a result of the termination of AeroSage's contract with B3, including:

> loss of existing valuable government contracting performance record, **loss of existing subcontracts with the Defendants, loss of near certain option years and likely future government contracts including VA SDVOSB T4NG contracts / subcontracts**, loss of his entire personal (and joint with his spouse) wealth, liquidation (at pennies on the dollar) on the two profitable businesses he built during his post-active military life, financial ruin, **loss of $10s millions of contract/subcontracts that he was reasonably assured for options years and still ongoing task orders**, loss of all non-exempt assets (including bankruptcy for his AeroSage property and foreclosure on [AeroSage Holdings Group LLC] which he held the property rights to before they were stolen in an uneconomic retaliatory sheriff's sale), all savings and investments, rights to claims against the government from government contracts, probably unrecoverable reputational damage, severe emotional distress aggravating his disabilities, marital strife, and loss of colleagues, friends, and family relations.

(Id. at 15-16) (emphasis added). The second amended complaint also alleges:

> There is a direct harm to [sic] Mr. Snyder, the sole member [of AeroSage], such that **the alleged injury does also flow from any harm to the disregarded entity** [AeroSage], that Mr. Snyder was an employee, since the former entities interests, and standing is legally indistinguishable from Mr. Snyder personal interests and these special injuries to the Mr. Snyder are distinct from those sustained by the other shareholders or members because there were none.

(Id. at 21) (emphasis added). He seeks damages including "lost earnings from terminated, discontinued VA T4NG subcontracts and option years, [and] lost earning from other VA T4NG subcontracts that Plaintiff would have been awarded as a compliant VA SDVSOB." (Id. at 30).

Now, all Defendants move to dismiss the second amended complaint. (Doc. ## 100, 102). Snyder has responded (Doc. ## 106, 107), and the Motions are ripe for review.

## II. Legal Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, as here, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In factual attacks, on the other hand, the Court delves into the arguments asserted by the parties and the credibility of the

7

evidence presented. Garcia v. Copenhaver, Bell, & Assocs., 104 F.3d 1256, 1260-61 (11th Cir. 1997).

Rule 12(h)(3) states: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Thus, the Court may consider motions to dismiss for lack of subject matter jurisdiction at any time." Roberts v. Swearingen, 358 F. Supp. 3d 1341, 1346 (M.D. Fla. 2019).

### III. Analysis

As an initial matter, the Court considers only those allegations contained in the second amended complaint. (Doc. # 91). The Court will not review the allegations of prior complaints or briefs that Snyder has attempted to incorporate by reference into the second amended complaint. See (Id. at 2, 17, 23, 26). Indeed, in a similar FCA retaliation case brought by Snyder, the Court "advise[d] Snyder that it is improper to incorporate by reference allegations from previous pleadings, as he did in the amended complaint. All allegations he wishes to include in the second amended complaint must be alleged in the second amended complaint." HMS Techs., Inc., 2024 WL 493086, at *5. Notably, this opinion was issued over a month before Snyder filed the second amended complaint in this action. Thus, at the time of drafting the

8

second amended complaint, Snyder was well-aware that the Court does not permit incorporation by reference of previous pleadings.

All Defendants challenge Snyder's standing to bring this suit on his own behalf. See (Doc. # 100 at 2, 10-11) (arguing that "Plaintiff does not allege facts establishing that he has standing to sue Hunt or Palmer"); (Doc. # 102 at 9-15) (arguing that the second amended complaint "fails to demonstrate that Snyder has standing to bring a retaliation claim against any Defendant – either as an individual or on behalf of AeroSage").

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to

9

the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. An injury-in-fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." Id. "To establish standing, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Guillaume v. Hyde, No. 20-60276-CIV, 2020 WL 3317042, at *3 (S.D. Fla. June 18, 2020) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)), aff'd sub nom. Guillaume v. U.S. Dep't of Veterans Affs., 847 F. App'x 627 (11th Cir. 2021).

The Court agrees with Defendants that Snyder lacks standing for the reasons the Court explained in another of Snyder's FCA retaliation cases. See HMS Techs., Inc., 2024 WL 493086, at *5 (dismissing complaint for lack of standing). In so holding, the Court has conducted a review of the second

10

amended complaint. The Court has also considered the contract between B3 Group and AeroSage LLC, which was attached to the Motions to Dismiss but was referenced in and is central to the allegations of the amended complaint. See (Doc. # 100-1, Ex. 1) (Subcontract Agreement between B3 Group, Inc. and AeroSage LLC, signed by Snyder as President of AeroSage in March 2018). Just as in the HMS case, Snyder has not plausibly alleged that he was an employee of or had a contract with any of Defendants. Rather, AeroSage, of which Snyder was sole member, owner, and President, had a contract with B3 Group. See (Doc. # 91 at 2-3, 13, 21).

"Under Florida law, a member of an LLC may bring an action on an individual basis only if: (1) there is a direct harm to the member, such that the alleged injury does not flow subsequently from an initial harm to the company; and (2) there is a special injury to the member that is separate and distinct from those sustained by other members." Chavez v. Coro, No. 19-23577-CIV, 2019 WL 4929929, at *2 (S.D. Fla. Oct. 7, 2019); see also Dinuro Invs., LLC v. Camacho, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014) ("[A]n action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there

11

is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members."). "Under the direct harm test, the court examines 'whether the harm from the alleged wrongdoing flows first to the company and only damages the shareholders or members due to the loss in value of their respective ownership interest in the company, or whether the harm flows directly to the shareholder or member in a way that is not secondary to the company's loss.'" Chavez, 2019 WL 4929929, at *2 (quoting Strazzulla v. Riverside Banking Co., 175 So. 3d 879, 883 (Fla. 4th DCA 2015)). "Members of a limited liability company may also bring a direct action 'where there is a separate statutory or contractual duty owed by the wrongdoer to the individual.'" Ecomed, LLC v. Asahi Kasei Med. Co., No. 16-62301-CIV, 2017 WL 7795446, at *2 (S.D. Fla. Apr. 28, 2017) (quoting Strazzulla, 175 So. 3d at 885).

Here, the second amended complaint alleges that Defendants retaliated primarily by terminating B3 Group's subcontract with AeroSage. (Doc. # 91 at 3, 25-27); see also (Id. at 25) ("Instantly the B3 teams [sic] demeanor changed and they stopped looking for ways that Mr. Snyder could get B3 in compliance by replacing MCS and began to be circumspect hinting at efforts to terminate Mr. Snyder's subcontracts.").

12

The damage suffered as a result of the termination of AeroSage's contract was AeroSage's "loss of existing subcontracts with the Defendants, loss of near certain option years and likely future government contracts including VA SDVOSB T4NG contracts / subcontracts" and "loss of $10s millions of contract/subcontracts that he was reasonably assured for options years and still ongoing task orders." (Id. at 15-16). AeroSage's loss of millions of dollars in business through VA contracts was the direct harm caused by the contract's termination.

Thus, the alleged damage to Snyder described in the second amended complaint is not a direct harm or a special injury to Snyder individually. See Guillaume, 847 F. App'x at 629 ("Here, the district court did not err in dismissing Mr. Guillaume's complaint for lack of standing. Mr. Guillaume did not demonstrate that he suffered a distinct injury, separate and apart from the diminution in value of his company's corporate assets, to support his contention that he has shareholder standing. Although he argues that he suffered because his name was taken from the VA registry for veteran-owned small businesses, it was AFILY8 that suffered the damages because the preferential contracting benefit extended to the business — not to him directly. Further, he did not

13

allege or demonstrate a violation of duty owed directly to him.").[1]

Rather, the damages Snyder alleges he personally suffered all flow from the harm to AeroSage of losing its contracts. While Snyder, as the owner and member of AeroSage, inevitably suffered financial harm after AeroSage lost its contract (including his "loss of his entire personal . . . wealth" and "financial ruin" (Doc. # 91 at 15-16)), this harm was a secondary result of the injury suffered by AeroSage. As the Court explained in the HMS opinion, "Snyder lost millions of dollars only because AeroSage lost contracts that would have brought it millions of dollars." HMS Techs., Inc., 2024 WL 493086, at *4. Indeed, despite his attempts to plead around this problem, Snyder's allegations make it clear that his harm flowed from the harm to AeroSage. The second amended complaint states in relevant part: "There is a direct harm to [sic] Mr. Snyder, the sole member [of AeroSage], such that

---

[1] In the second amended complaint, Snyder attempts to distinguish the facts of his case from those of Guillaume. See (Doc. # 91 at 16 & n.7, 19-20 & n.13). Snyder also argues that Guillaume "was wrongly decided because Mr. Guillaume also had a valuable personal asset earned by his service and willingness to risk his personal assets in unconditionally owning and operating a business supporting VA acquisitions." (Id. at 20 n.13). The Court is unpersuaded. Guillaume, which involved claims asserted by the owner and shareholder of a SDVOSB company, is on point and was correctly decided.

the alleged injury does also flow from any harm to the disregarded entity [AeroSage]." (Doc. # 91 at 21).

While Snyder alleges that AeroSage was a disregarded entity for tax purposes (Id.), the Court is not persuaded that such status justifies ignoring that AeroSage — rather than Snyder — was the entity with the relevant contracts. Neither does the fact that AeroSage derived its status as a SDVOSB from Snyder's status as a veteran render the alleged retaliation done to AeroSage a direct harm to Snyder. (Id.). As Defendants Octo and B3 Group note, Snyder does not allege "that he lost his veteran status or eligibility for VA and/or U.S. Small Business Administration veteran preference programs." (Doc. # 102 at 14).

"Nor does the amended complaint plausibly plead a separate statutory or contractual duty owed to Snyder individually." HMS Techs., Inc., 2024 WL 493086, at *4. The Court could not locate a single allegation that Defendants owed Snyder personally a separate statutory or contractual duty. In short, Snyder lacks standing to assert an individual FCA retaliation claim.

Given that the contracts at issue were with AeroSage, it is likely that AeroSage would have standing to pursue those claims on its own behalf in its bankruptcy proceedings. See

15

In re AeroSage LLC, Case No. 8:21-bk-3694-CPM (Bankr. M.D. Fla. July 15, 2021). However, as Snyder alleges, the bankruptcy trustee has declined to pursue such retaliation claims. (Doc. # 91 at 22). Apparently, in an email to Snyder, the bankruptcy trustee wrote "I will not be pursuing the below [] causes of action. Accordingly, if you believe warranted, you may pursue them *on your own behalf*." (Id.) (emphasis added).

This does not plausibly support that AeroSage transferred its choses in action of the FCA retaliation claims to Snyder. The bankruptcy trustee merely stated that he would not file an FCA retaliation claim for AeroSage, but that Snyder could pursue such claim "on [his] own behalf" — not on behalf of AeroSage. Even if the bankruptcy trustee had told Snyder that Snyder could pursue a claim on AeroSage's behalf, there is no allegation that the bankruptcy court has approved the transfer of AeroSage's assets (the choses in action) to Snyder.

Thus, to the extent Snyder is attempting to assert an FCA retaliation claim on AeroSage's behalf, he has not plausibly pled authority to do so. Furthermore, as the Court has previously informed Snyder, he could not proceed pro se while asserting claims on behalf of an LLC. See HMS Techs.,

16

Inc., 2024 WL 493086, at *4 ("[B]ecause AeroSage is a corporate entity, it would not be able to proceed pro se."); see also Blue Moon Mktg., LLC v. Matthews, No. 6:14-cv-2036-CEM-LRH, 2019 WL 13246832, at *2 (M.D. Fla. Oct. 4, 2019) ("[L]imited liability companies, like corporations, 'may appear and be heard only through counsel.'" (citation omitted)); M.D. Fla. Local Rule 2.02(b)(2) ("A party, other than a natural person, can appear through the lawyer only.").

Because Snyder lacks standing to assert the FCA retaliation claim, the second amended complaint is dismissed. The Court need not address Defendants' additional arguments for dismissal. The Court determines that further amendment would be futile. Again, the Court had issued the HMS opinion explaining why Snyder lacked standing to pursue FCA retaliation claims derived from AeroSage's contracts over a month before Snyder filed the second amended complaint in this very factually similar case. Yet, even with that guidance on the law of standing, Snyder failed to plausibly allege standing here. Thus, the Court dismisses this case without prejudice for lack of standing and closes the case.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Octo Consulting Group, LLC, and B3 Group, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 102) is **GRANTED** as to standing.

(2) Defendants Philip D. Hunt and Brad B. Palmer's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction (Doc. # 100) is **GRANTED** as to standing.

(3) The second amended complaint (Doc. # 91) is dismissed without prejudice for lack of standing.

(4) The Clerk is directed to enter judgment accordingly, terminate all deadlines and, thereafter, **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of May, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE